[No. 11758.  Department Two.  June 25, 1914.]

ALICE C. DOYLE, *Appellant*, v. W. E. LANGDON, *Respondent*.[1]

EXECUTORS AND ADMINISTRATORS — DISTRIBUTION — VACATION — FRAUD—EVIDENCE—SUFFICIENCY. Fraud on the part of an administrator in securing final distribution of the whole estate to himself, as widower of the deceased, on the theory that the property was their community property, to the exclusion of the mother of the deceased, who claimed an interest in that the property was deceased's separate estate, is not shown by clear and satisfactory evidence, from the fact that the administrator at first wrote a letter stating that the property would be distributed to them both as sole heirs, where the letter stated that the property was community property, and shortly after, long before distribution, both by letter and personally, he explained that he had been mistaken as to the rule of descent of community property, and claimed to be the sole heir, and such claim was unquestioned until after final distribution.

HUSBAND AND WIFE—COMMUNITY PROPERTY — COMMINGLED FUNDS. There was such a commingling of separate and community funds that the court cannot say that any part of the property acquired was the separate property of the wife, where, ten years before the wife's death, certain proceeds of her separate real estate was deposited in a bank, and the husband from time to time, contributed from his earnings to the fund, from which was paid all their household expenses, as well as sums paid in the acquisition of property possessed by them at the time of the wife's death.

APPEAL—HARMLESS ERROR—EVIDENCE. The erroneous admission of evidence is harmless where the result of the cause would be unchanged were the evidence excluded.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 4, 1913, dismissing an action for equitable relief, after a trial on the merits to the court. Affirmed.

*Sherwood & Mansfield*, for appellant.

*Walter S. Fulton*, for respondent.

FULLERTON, J.—On November 29, 1909, Katherine F. Langdon died intestate, in King county, Washington, leav-

[1]Reported in 141 Pac. 352.

ing an estate, situated in part in King county and in part in Snohomish county, consisting of real and personal property. Letters of administration on her estate were issued to W. E. Langdon, as her surviving husband, on December 13, 1909. On the same day, the administrator filed the statutory affidavit of heirs, averring therein that he, as the surviving husband of the deceased, whose place of residence was at Seattle, Washington, and the appellant Alice C. Doyle, as her mother, whose place of residence was at Chicago, Illinois, were the sole heirs of the deceased's estate. Due notice to creditors was given, and the administration of the estate was proceeded with regularly otherwise, until February 27, 1911, at which time the administrator filed his final account with the estate, together with a petition for distribution. In this petition, the administrator averred that the property of the estate was the community property of himself and his deceased wife, and that he was the sole heir and distributee thereof. April 3, 1911, was fixed by the court for settling the final account and for a hearing on the petition, of which time the statutory notice was regularly given. No appearance was made on the day appointed for the hearing by any one claiming to be interested in the estate, and on that day the court entered a decree approving the final account and awarding the property to the administrator as the surviving husband of the deceased, reciting in the decree that the property of the estate was community property.

The present action was begun by Alice C. Doyle, on August 17, 1912, to set aside the decree of distribution and for an award to her of an undivided half interest in the property. In her complaint, she alleged that the property of the estate was the separate property of Katherine F. Langdon; that she was the mother of the deceased, and a co-heir to her estate with the administrator, W. E. Langdon, and that she had been deprived of her interest therein by the fraud and deceit of the administrator. The administrator answered the allegations of the complaint by a general denial; and on the

issues thus framed, a trial was had before the court, as a cause of equitable cognizance. No formal findings of fact or conclusions of law were made by the court, but the learned trial judge, at the close of the case, made an orderly and succinct statement of the evidence and of the conclusions he drew therefrom, finding that no fraud had been practiced upon the plaintiff by the administrator, and that the property was, in fact, the community property of the deceased and her husband, and not the separate property of the deceased, entering a judgment accordingly. From the judgment entered, this appeal is prosecuted.

The claim of fraud and deceit is based upon the conduct of the administrator had in connection with the probate proceedings. From the statement of the facts relating to the administration proceedings, it will be observed that the proceedings were apparently instituted originally on the theory that the property of the estate was the separate property of the decedent, in which case it would descend in equal shares to the respondent and appellant, and that the administrator subsequently adopted the theory that the property was community property, which would change the rule of descent, the respondent in that case being the sole heir thereof. In connection with this, the appellant testified (her testimony being taken by deposition) that, shortly after the institution of the probate proceedings, the respondent wrote a letter to a member of her family at Chicago in which he stated the fact of his wife's death, the fact that she left an estate, that he had begun administration proceedings upon the estate and would attend to its due administration, and that the appellant with himself were the heirs at law of the estate and the persons to whom it would be finally distributed. She testified further that she relied upon these statements, believing that the respondent would carry into effect his promises, and had no knowledge or idea prior to the entering of the decree of distribution that the estate would not be so distributed; that she was thereby lulled into security, and, for

that reason, did not appear in the proceedings or take any steps otherwise for the protection of her interests.

But, however persuasive these facts may be, when considered by themselves, they lose much, if not all, of their effectiveness when considered with other facts in the record. The testimony on the part of the respondent tended to show that he did not so much change his opinion as to the character of the property of the estate—that is, whether it was separate or community property—as he did his views of the law with relation to the descent of community property. He testified that he at all times understood and claimed that the property was community property, but understood from his attorney that the rule of descent as to property of that character did not differ from the rule applicable to separate property. The letter on which the appellant relies bears out this statement. In it, he describes the property left by the decedent with particularity, and speaks of it as property "we owned," as "our property," and as "community property;" saying therein, "Mother Doyle and I are the sole heirs of Katherine's community interest" in such property. This letter was written on the day after letters of administration were granted to him, before he made claim to be the sole heir of the estate, and before he learned that the rule of descent was different with respect to community property than it was with reference to separate property. Clearly, if he thought then that the property was the separate property of his wife, he would not have used the terms in describing it that he used in the letter. Moreover, it was shown that he discovered his mistake about a month later, and immediately wrote another letter to a member of the appellant's family at Chicago, in which he enclosed copies of the statutes of this state showing the rule of descent with reference to community property, and saying that he had been in error in regard thereto in his former letter. That this letter, at some time, reached the appellant is made clear by her deposition, as she attaches the same thereto. That she

received it long prior to the close of the administration of the estate, we think is also clear. Aside from the fact that it is improbable that a member of her family would not immediately show her a letter which so vitally affected her interests, the respondent testifies that he visited the appellant and the different members of her family at Chicago, not long after writing it, and that on this visit. the matter of the heirship of the estate was fully talked over with the appellant, in the presence of different members of the family, including the persons to whom the letters were written. Some fault is found because the letters were not written directly to the appellant, and because the second letter was not written to the same member of the family to whom the first one was written. But the fact that the appellant was not addressed directly is explained by her rather extreme age and her inability to either read or write. As to the other part of the objection, it seems that neither of the persons addressed resided in the immediate family of the appellant, and it is difficult to see why one might not as well be addressed as another. But the fact is immaterial, since we conclude that knowledge of the contents of the letter, and knowledge of the respondent's intended action with regard to the estate, were brought home to the appellant prior to the time the administration thereof was closed.

.Since fraud must be proved by clear and convincing evidence, we are unable to conclude, on the foregoing facts, that the trial court did not rightly decide that fraud had not been proven. We have not overlooked the appellant's strictures upon the conduct and character of the respondent, based upon his past history, but, giving these their full weight, we agree with the trial judge that it is difficult to conceive anything the respondent could have done that he did not do towards informing the appellant and her immediate relations of his intentions with regard to the property.

But, moreover, we cannot follow the appellant in her claim that the property of this estate was the separate property

of the decedent. The evidence regarding this branch of the case can hardly be even epitomized here, but it has its foundation in the claim that the property left by the decedent was the result of investments made by her of moneys she had prior to her marriage with the respondent. The parties were married on May 23, 1899, some ten years prior to the wife's death. The appellant testifies that her daughter had at that time money and personal property of the value of more than $10,000, and real property in the city of Chicago of the value of about $8,000, which was sold shortly after her marriage. The respondent, however, testifies that his wife had no money at the time of the marriage, and that the sale of the Chicago real estate, mentioned by the appellant, netted, after the commissions on the sale and the amount of a mortgage thereon had been deducted, a little less than two thousand dollars. He further testified that this money was deposited in a bank with moneys of his own; that he contributed to such fund from time to time as money was earned by him; and that, from this fund, was paid all of their household expenses, as well as the sums which were paid in the acquisition of the property possessed by them at the time of his wife's death. None of the wife's separate funds was traced directly into any particular piece of property, and we conclude, with the trial court, that there was such a commingling of community and separate funds as will not enable the court at this time to say that any part of the property acquired was the separate property of the wife.

The appellant further complains that the court erred in the admission of certain evidence. But, aside from the fact that we think the evidence properly admitted, we are unable to conclude that the result of the cause would be changed were the evidence excluded. If error at all, it was error without prejudice, and therefore immaterial.

The judgment is affirmed.

CROW, C. J., MORRIS, PARKER, and MOUNT, JJ., concur.