[No. 16471. Department Two. July 1, 1921.]

# In the Matter of the Estate of JOHN F. CURTIS.[1]

APPEAL (81)—RIGHT TO APPEAL—PARTIES—DISMISSAL—IN GENERAL. An appeal of parties of record will not be dismissed on the ground that they did not appear below, where attorneys filed an affidavit showing their authority and appearance in their behalf.

EXECUTORS AND ADMINISTRATORS (1, 29½)—NECESSITY OF ADMINISTRATION—ADMINISTRATORS DE BONIS NON. Where an executor for an estate died after eighteen years of incumbency without having closed and procured distribution of the estate, nor given the notice to creditors ordered by the court at the time of his appointment, the court had jurisdiction to appoint an administrator de bonis non with the will annexed; since creditors of the estate had not been conclusively barred; and Rem. Code, § 1368, providing nonliability of an estate for debts unless letters of administration be granted within six years after death of the decedent is inapplicable in view of the actual appointment of an executor.

SAME (165)—COMPENSATION—RATE AND COMPUTATION — ALLOWANCE. Where the services of an administrator de bonis non consisted wholly in giving notice to creditors, procuring appraisement of the property of the estate, rendering a final account and procuring an order of final settlement, discharge from creditors, and decree of distribution, an allowance of $600 should be reduced to $250.

HUSBAND AND WIFE (58, 60)—COMMUNITY PROPERTY—PRESUMPTION—EVIDENCE—SUFFICIENCY. The presumption of the community character of property acquired during coverture is not overcome by a showing that the separate property and community earnings of the spouses were commingled in the acquisition of what is claimed as community property.

WILLS (86)—RIGHTS OF DEVISEES—ELECTION. The duty of a widow to elect whether she will take under her husband's will devising to her a life use in specific realty or under her own right as a community owner need not be exercised until the time of distribution, where her right has not been disputed.

ESTOPPEL (61)—PERSONS TO WHOM AVAILABLE. Estoppel of a widow to claim a community interest in real estate which her husband's will treated as separate property from which she was to have a net income for life cannot be asserted by heirs who never complied with the provisions of the will for her net income.

[1] Reported in 199 Pac. 309.

Appeal by legatees from a judgment of the superior court for King county, Jurey, J., entered December 18, 1920, decreeing a settlement and distribution of an estate, after a hearing upon exceptions to the final account of the administrator. Modified.

*Geo. McKay, Winter S. Martin,* and *Roy D. Robinson,* for appellants.

*Shorett, McLaren & Shorett,* for respondents.

HOLCOMB, J.—John F. Curtis died in King county, Washington, in 1893. He left a will which was thereafter duly probated in, and by, the superior court of King county, disposing of his estate. After certain usual and customary provisions, the provisions of the will in controversy and most material in this matter, were these:

"Third: I give and bequeath to my beloved wife Ellenor the rents and use of all my personal estate of every description whatever, money I may have on hand at the time of my death and all securi*etes* for money, indebtedness, chances (choses) in action, subject only to the payment of my debts and funeral expenses.

"Fourth: I give the use of the building and rents to receive on lot number three, block twenty-six in the town of Sprague, now recorded in Lincoln county, state of Washington—

"Fifth: I give the use of lots one and two, block nin-ty-eight, David D. T. Denny-s fifth addition to Seattle, King county, state of Washington—also the use and collection of rents on 3 houses on John street and two on lot*s* No. 2 running on said lot to alley.

"Sixth: I give the use of lots No. 1 and 2, block sixteen, and the use and collection of rent on the house built on lot 1, corner Adams and 12th street extension to Fairhaven, situated in Fairhaven, Whatcom county, state of Washington.

"Seventh: All my money received from rents or lease of lots to be received by my wife Ellenor or her

agents and to take out fifty dollars from said rentals
for her maintenance and support and the ballance left
in the bank drawing interest and not to be drawn out
except for repairs of houses and taxes and street
grades and in case one of the houses burn down, and to
make out a yearly report to my son Leonard Harvey
John Curtis, giving detail and receipts of all work done
yearly. I make these provisions and stipulations so as
to give a correct account so it will enable my son Leon-
ard as to the wants of all buildings and taxes and re-
pairs and all other items.— should there be not money
enough coming in from rents my son Leonard must
make up the amount for the support of my wife El-
lenor maintenance and the f-ur heirs will have to pay
equal share—no lots nor any of the houses to be sold
if possible.

"Eighth: At the death of my wife Ellenor all the
property of every description and all moneys in banks
coming from the receiving of the rents to be given over
to the rightful heirs begotten by me and the lawful
heirs are Mary Eliza Ellen Facer, now in Colorado,
Matilda Sarah Winterburn Fairweather, of Spokane,
Leonard Harvey John Curtis of this state of Wash.,
Anson Erastus Jeptha Curtis, of Albina, Oregon, at
the death of my wife Ellenor this property herein de-
scribed must be divided equally as the four heirs m-y
decide on—this to be done as soon as my wife Ellenor
his burried, all funeral expenses to come out of the
estate.

"Eighteenth: To my wife Ellenor until her death
to live in the house on corner of John and Bissmar-k
street if she wishes or she can live in any of the house-
she chooses untill her death and if is apparent to the
executor that she becomes demented or sickness over-
takes her and her reason leaves her for the executor to
take hold of it and do the business for her. All the
furniture I die possessed with, and bedding and clothes
for her own and to be given to whom she likes. I would
prefer Lizzie Cox to have them."

By other paragraphs of his will, he left small be-
quests of personal articles to certain of his own child-

ren, and also children of the surviving wife. He nominated his son Leonard Harvey John Curtis as executor and provided that he should not be obliged to give security before obtaining letters testamentary. Leonard Harvey John Curtis, upon the admission of the will to probate, was granted letters testamentary, without bond. The executor died in 1911, without having closed and procured distribution of the estate and without, in fact, having given notice to creditors, although an order so to do had been made by the superior court for King county upon the admission of the will to probate, and his appointment as executor.

The widow, Ellenor Curtis, was a second wife of the testator, and had no children by him, but had three children by a previous marriage. Elizabeth Curtis, the first wife of decedent, died in The Dalles, Oregon, in February, 1881, leaving four children, who were the four children and representatives of deceased children involved in this proceeding. The testator and his first wife had lived in the state of Washington from about the year 1870 to about the year 1879, and had acquired property in what was then Fairhaven (now Belling-, ham), Whatcom county, Washington, and a tract of land near Silver Lake and Castle Rock, Cowlitz county, Washington, and real estate in The Dalles, Oregon, after their removal there, which they used for a home, and a small house which was rented to their son, Anson. After the death of the first wife in 1881, the surviving husband visited his old home in England, and on his return trip in December, 1881, he married Ellenor Curtis at La Porte, Indiana. He immediately came west after his marriage and took a position with the Northern Pacific Railway Company as master mechanic, at Pasco, Washington, removing in about three months to Sprague, Washington, where his duties had

been transferred. His wife came west to join him at Sprague in the summer of 1882. In his capacity as railroad master mechanic, Curtis earned between $200 and $250 per month, and retained the position until the spring of 1883, or a little over one year. He then went to Seattle. While living at Sprague he built a residence, probably costing, according to the testimony, in the neighborhood of $3,000. On April 6, 1883, he sold and conveyed the property at The Dalles, Oregon, for $2,500. On June 11, 1883, or a little over two months thereafter, he acquired the Seattle property, which is now in dispute, for a consideration of $1,000, which was paid in cash, and the conveyance immediately made by deed. This property was later improved with five small frame houses, the first one of which to be built was occupied as a home by Curtis and wife, and the other four were rented.

Leonard Curtis, as executor of the last will of John F. Curtis, filed two meager reports after his appointment, but did nothing further up to his death in 1911.

In the year 1919, the present administrator was appointed administrator with the will annexed *de bonis non* on the application of Ellenor Curtis, the surviving widow. No notice of the application for the appointment of the present administrator was given, the court making an order that no notice was necessary. The present administrator, with the will annexed *de bonis non*, caused an inventory to be prepared, had appraisers appointed, and had the property appraised. The property was appraised as community property of the value of $15,000. He published notice to creditors as directed by the order entered in 1893, and after the expiration of the time for serving and filing claims against the estate he prepared and filed his final account and petition for distribution, and gave the cus-

tomary notice of hearing thereon. Prior to the hearing, objections were filed to the necessity for an administrator with the will annexed, and also objections to the manner of distribution proposed by the administrator.

The attorneys for appellants originally appeared for Anson Curtis and also all the other legatees who would join with him. Thereafter, during the proceedings, the attorneys named as objectors all of the surviving heirs and descendants of John F. Curtis, save and except the widow, as those for whom they appeared. A motion was made by respondents to dismiss the attempted appeal of John Facer, Frederick Facer, Cora A. Facer Pauley, and Eunice Facer Struthers, for the reason that they neither served nor filed nor made any objections to the final account and petition for distribution before the entry of the decree of settlement and distribution.

We will deny the motion to dismiss the appeal as to the foregoing named persons, presuming that the attorneys were authorized to, and did, appear for all the aforenamed persons, which authority is supported by affidavits filed by attorneys Martin and McKay.

The first complaint of appellant is that the court below should have sustained their objections to the probate proceedings appointing Edward R. Taylor as administrator *de bonis non* with the will annexed. They urge that all of the property belonging to the estate was delivered over to the parties entitled thereto, according to the terms of the will; that during the administration of Leonard Curtis all the debts of the estate were paid, and that the estate was practically closed; that there was no property not administered, and property not administered only gives the court jurisdiction to appoint an administrator *de bonis non*.

It is argued that the policy of our statute (Rem. Code, § 1368) reading:

"No real estate of a deceased person shall be liable for his debts unless letters testamentary or of administration be granted within six years from the date of the death of such decedent."

is against allowing the probate proceedings to be revived as this was.

We are of the opinion, contrary to the contention of the respondent, that appellants made their objections at the first opportunity to the appointment of this administrator, but that their objection is untenable for the reason that: (1) the statute (§ 1368, Rem. Code), does not apply, because letters testamentary had been applied for and granted within six years after the death of decedent, and the probate was open and continuous, and in the hands of the executor named in the will from that time to the date of the death of that executor; and (2) that the executor had not conclusively barred creditors against the estate, for the reason that he had not published notice to creditors as required by law and by the order of the court, and we have held that in order to determine whether there was any creditor or creditors it was necessary to publish notice, and until the order of the court is complied with any claims which may exist would not be barred. *Donnerberg v. Oppenheimer,* 15 Wash. 290, 46 Pac. 254; *McFarland v. Fairlamb,* 18 Wash. 601, 52 Pac. 239; *In re Collins' Estate,* 102 Wash. 697, 173 Pac. 1016; *State ex rel. Mann v. Superior Court,* 52 Wash. 149, 100 Pac. 198.

The completion of the probate and conclusive barring of creditors being justified, the administrator *de bonis non* was entitled to some allowance for his services. The trial court allowed and credited him, as

against the appraised value of the estate remaining, the sum of $600, and for commissions earned, and of this appellants complain. His services consisted wholly in giving notice to creditors, causing appraisers to be appointed and appraisement of the property of the estate made, and rendering a final account and settlement, and procuring an order of final settlement, discharge from creditors, and decree of distribution, and for such services, not requiring the passing on claims of creditors, no handling of funds or personal property and disposing of the same, we think $600 allowed by the trial court greatly excessive. That allowance is hereby modified and reduced to the sum of $250, which we consider very ample.

Appellants next complain of the findings of the court that the real estate involved in this appeal is community property of John F. Curtis deceased, and Ellenor Curtis, his surviving wife, and in decreeing distribution to the appellants of the remainder of one-half of the property in controversy instead of the entire property after the termination of the life estate of respondent widow.

After diligently reading the entire record, including a full statement of facts, we are unable to say that the evidence is sufficiently strong and convincing to overthrow the presumption of the community status of the property arising from the fact that the property was acquired during coverture of the testator and his surviving widow. There is no strong and convincing evidence controverting the fact that at the time of the acquisition of the property in question, the testator had considerable earning capacity, at a time when the purchasing power of a dollar was considerably greater than now; that Ellenor Curtis also had some little property, and that at most separate property of each,

and community earnings were commingled in the acquisition of this property. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204.

Appellants then contend that if we find that the property involved was community property, then, under the terms of the will, the widow was required to elect and take either under the will or against it; and they contend that she has conclusively elected to take under the will, and therefore confined to her life estate in the property, and the distribution made by the court is incorrect.

Conceding that the testator by his will made provision for his widow which he was under no legal obligation to make, and that he dealt with the entire estate as if it were his separate property, devising to her a life use of specifically described real estate, and that she was therefore required, under our decisions in *Herrick v. Miller,* 69 Wash. 456, 134 Pac. 189, and *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255, to elect whether she would take under the will or under her own right as community owner, we are of the opinion nevertheless that she was not required to make such election, where her right had not been disputed, until distribution. This she has done. She petitioned for distribution and declared that the property was community property. *In re Smith's Estate,* 108 Cal. 115, 40 Pac. 1037.

Nor are appellants in any position to assert estoppel and laches on the part of the widow when they themselves did not comply with the provisions of the will during the eight years of the executorship of Leonard Curtis, and ten years since the death of the executor, Leonard Curtis, to contribute sufficient to assure the widow a net income of fifty dollars per month, and maintain the status of the real estate as separate

estate, the remainder of which would be distributed to the residuary devisees upon the termination of the life tenure.

The distribution made by the court will be affirmed.

The decree will be modified as hereinbefore specified fixing the administrator's commissions at $250, and the appellants will recover costs of appeal.

PARKER, C. J., TOLMAN, MAIN, and MITCHELL, JJ., concur.