[Civil No. 2882.  Filed May 6, 1931.]

[298 Pac. 929.]

S. J. RUNDLE and JOHN H. GAGE DEVELOP-
MENT COMPANY, INC., Appellants, v. RENO
W. WINTERS and LULU M. WINTERS, His
Wife, Appellees.

240

Messrs. Stockton & Perry, Mr. Thomas A. Flynn and Mr. Thomas W. Nealon, for Appellants.

Messrs. Hayes, Stanford, Walton, Allee & Williams, for Appellees.

Messrs. Struckmeyer & Jennings, for Appellee Lulu M. Winters.

LOCKWOOD, J.—Reno W. Winters and Lulu M. Winters, his wife, hereinafter called plaintiffs, brought suit against S. J. Rundle and John H. Gage Development Company, a corporation, hereinafter called defendants, to quiet the title to certain real estate situated in Maricopa county, alleging that they were its owners, and that defendants claimed some interest therein adverse to that of plaintiffs.

Defendants, answering, stated in substance that on the third day of October, 1927, plaintiff Reno W. Winters executed to defendant Rundle an option to pur-

chase the premises in question; that Rundle had assigned said option to his co-defendant, the John H. Gage Development Company, and that the company had elected to exercise the option in accordance with the terms thereof, but that Winters had refused to carry out his part of the contract. The answer further alleged that said property was the sole and separate property of Reno W. Winters, and that plaintiff Lulu M. Winters by her conduct was estopped from claiming any interest therein. The same facts were set up by the company in a cross-complaint, and it asked for specific performance of the contract, and that plaintiff Lulu M. Winters be adjudged to have no interest in the property.

Plaintiffs replied, denying that plaintiff Lulu M. Winters had ever consented to the execution of the option, stating that defendants well knew at the time it was executed that she had refused to agree to it, and also alleging that the property in question was at all times the community property of plaintiffs.

The case was tried before the court sitting with a jury, and at the termination of the evidence the court found there was no conflict therein upon the material facts necessary for a determination of the case, discharged the jury from further consideration of the matter, and, after making its findings of fact and conclusions of law, rendered judgment to the effect that plaintiffs were the owners of the realty in question as community property, that neither of defendants had any right, title or interest thereto, and that they were forever barred from claiming any interest therein. From the judgment rendered, defendants have appealed.

There are some thirty-six separate assignments of error which are grouped by defendants under fourteen propositions of law, but in considering the case we shall first determine the fundamental principles

which we think govern it under the facts, and then apply these principles to the specific assignments.

The first question for our consideration is whether the court erred in discharging the jury and making its own findings of fact. This being an equity case, while parties are entitled to a jury, its verdict is merely advisory. *Donahue* v. *Babbitt*, 26 Ariz. 542, 227 Pac. 995. The court, though it must harken to the advice of the jury, need not heed it. *Security Trust & Savings Bank* v. *McClure*, 29 Ariz. 325, 241 Pac. 515; *Light* v. *Chandler Imp. Co.*, 33 Ariz. 101, 59 A. L. R. 107, 261 Pac. 969.

However, when the evidence is of such a nature that, were it an action at law, it would be the duty of the court to instruct a verdict, it is obvious that no question of fact remains for the consideration of the jury, and it is proper practice that the court under such circumstances discharge the jury from further consideration of the case. *Ainsworth* v. *National Bank*, 33 Ariz. 466, 266 Pac. 8; *Light* v. *Chandler Imp. Co.*, *supra*; sec. 3829, Revised Code 1928. We must then consider whether or not the ultimate facts necessary to support the judgment of the court were so conclusively determined by the evidence that the court was justified in its action in discharging the jury.

It is the theory of plaintiffs that the property in question was their community estate; that the option given to defendant Rundle was signed by plaintiff Reno W. Winters alone, with the full knowledge on the part of Rundle that he was a married man; that his wife, when asked to sign the option, had refused to do so, and at all times thereafter continued in her refusal; and that under these circumstances the option was void and of no effect, but, that being a cloud upon the title, plaintiffs had the right to maintain this action.

It is the theory of defendants, on the other hand: (1) That the property in question was the separate property of Reno W. Winters, and that therefore the option of sale signed by him alone is valid and enforceable; (2) that, even if it was not his separate property, he was the agent of the community for the purpose of executing the option, and that Mrs. Winters is bound thereby under the rules of agency; and (3) that by her conduct she is estopped from asserting it to be community property, or that the option was not given with her full consent. So far as the question of agency is concerned, we think it may be disposed of very shortly. The personal property of the community by the express language of the statute may be disposed of during coverture by the husband only, as the agent of the community. *La Tourette* v. *La Tourette,* 15 Ariz. 200, Ann. Cas. 1915B 70, 137 Pac. 426; paragraph 3850, Rev. Stats. Ariz. 1913, Civil Code.

The paragraph of the Code granting that right mentions *personal* property only, and paragraph 2061, Revised Statutes of Arizona of 1913, Civil Code, says:

"2061. No conveyance, transfer, mortgage or incumbrance of any real estate which is the common property of husband and wife, or any interest therein, shall be valid unless such conveyance, transfer, mortgage or incumbrance shall be executed and acknowledged by both the husband and wife."

We are of the opinion that the two paragraphs, read together, absolutely negative any theory of statutory or implied agency on the part of the husband to dispose of the community realty. Such an agency must arise in the same manner as an agency conferred by a stranger, and subject to the same restrictions, and there is no pretense in the evidence that authority of that nature ever existed. Defendants' theory of agency has no standing in this case.

The second defense is that of estoppel. The testimony, taken in the strongest light in favor of defendants, shows that the original negotiations in regard to the option were between Rundle and Reno W. Winters. When they had arrived at a tentative agreement, the option was prepared and presented to Mrs. Winters for signature in the presence of Rundle. Mrs. Winters positively declined to sign the option then, but, according to Rundle, informed him she would have to consider the matter. No attempt was made thereafter by either Rundle or the company to obtain her signature, and she several times informed either them or their agents that she was not satisfied with the option and did not agree to it. There is some dispute as to the reason given by her for her dissatisfaction, but we think this is immaterial. The ultimate and uncontradicted fact is that the only time she was asked to sign she refused, and never thereafter agreed to or approved the option, and both defendants had actual or imputed knowledge of her refusal before they changed their position in any manner.

We have discussed the nature of an estoppel on the part of the wife to dispute a contract affecting community realty in *Hall* v. *Weatherford,* 32 Ariz. 370, 56 A. L. R. 903, 259 Pac. 282. A reading of that case and a comparison of the facts therein with the evidence in the case at bar will show that there was no issue of fact on the question of estoppel to submit to the jury.

The third and vital issue in the case is whether or not the property in question was the community estate of plaintiffs or the separate property of Reno W. Winters. In determining what the evidence shows upon this point, we first state certain rules of law applicable to the situation:

All property acquired by either husband or wife during coverture is presumed to be community, and the burden of proof is upon anyone asserting it is separate property to show that fact by clear and satisfactory evidence. *La Tourette* v. *La Tourette, supra; Malich* v. *Malich*, 23 Ariz. 423, 204 Pac. 1020.

Property takes its character as community or separate estate at the time of its acquisition. *Horton* v. *Horton*, 35 Ariz. 378, 278 Pac. 370; *Pendleton* v. *Brown*, 25 Ariz. 604, 221 Pac. 213.

When separate and community funds are mingled, the commingled funds are presumed to be community, and the burden is upon the one claiming them or any portion thereof to be separate to prove such fact and the amount by clear and satisfactory evidence. *Yesler* v. *Hochstettler*, 4 Wash. 349, 30 Pac. 398; *Doyle* v. *Langdon*, 80 Wash. 175, 141 Pac. 352.

Where either spouse is engaged in a business whose capital is the separate property of such spouse, the profits of the business are either community or separate in accordance with whether they are the result of the individual toil and application of the spouse, or the inherent qualities of the business itself. *Lake* v. *Bender*, 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; *In re Buchanan's Estate*, 89 Wash. 172, 154 Pac. 129; *Jacobs* v. *Hoitt*, 119 Wash. 283, 205 Pac. 414.

When spouses have treated the income from their separate property as community, and it was their intent that it should become community, the character of the income changes in accordance with their intention. *Volz* v. *Zang*, 113 Wash. 378, 194 Pac. 409; *In re Brown's Estate*, 124 Wash. 273, 214 Pac. 10; *Jacobs* v. *Hoitt, supra.* Nor can *subsequent* creditors attack such an agreement. *Yake* v. *Pugh*, 13 Wash. 78, 52 Am. St. Rep. 17, 42 Pac. 528. With these principles of law before us, let us consider the evidence.

We have examined the transcript of the evidence

carefully, and are of the opinion that on this point the ultimate facts, taking the evidence most strongly in behalf of defendants, are as follows:

Reno W. Winters came to Phoenix during the fall of 1918, and at that time contracted to purchase a certain pool and billiard business for $3,500, paying at the time the sum of $1,500 on account of the purchase price, and the balance from the earnings of the business before his marriage to Lulu M. Winters in 1920. At the time of his marriage, his total assets were his pool business, which occupied leased premises at all times, two pieces of real estate in Canada and North Dakota, respectively, which we need not consider in determining this case, $600 in Liberty bonds, and approximately $8,000 in cash in banks and safety deposits, all this being his separate estate.

A little over a year after this marriage the plaintiffs purchased two lots in the city of Phoenix at the cost of approximately $6,200, taking the title thereto in both of their names, and shortly thereafter erected an apartment house thereon, the total cost of which, including the lots, was approximately $42,000. The purchase of the lots and the building of the apartment house absorbed all the cash possessed by Reno W. Winters prior to his marriage, together with all his earnings and accumulations subsequent thereto, and the plaintiffs borrowed on their joint note and mortgage some $13,000 to complete the apartments. During all the time from their marriage to the purchase of the premises involved in this suit, plaintiffs commingled their income from all sources and treated it in all respects as community property.

Reno W. Winters continued his pool-hall business, giving his entire time thereto until about the month of May, 1927. This business was of such a nature that by far the largest portion of the profits therefrom was primarily the result of the individual toil

and application of Reno W. Winters, rather than the inherent qualities of the business itself. During this period he expended at least $5,000 in repairs and general upkeep and equipment for the business, and when he finally sold it in May, 1927, he received some $1,800 therefor. Of this sum $300 was deposited in the First National Bank of Arizona, in a checking account therein, and $1,500 in the Phoenix National Bank, in which bank he also had a checking account amounting at that time to some $900. A few days later he drew $3,190 from the First National Bank of Arizona, and deposited it in the Phoenix National Bank in the same account where he had previously deposited the $1,500 received from the sale of the pool-hall. After this last deposit, and on June 20th, he purchased from one Hall the premises in question, paying therefor $2,150 by checks drawn on his account in the Phoenix National Bank, and taking a deed to the premises in the name of "Reno W. Winters, a married man," though nothing was stated in the deed as to whether it was to be separate or community property. His wife was advised of the purchase, and both plaintiffs, at least to the date of the option, treated it as community property.

The only evidence tending to support defendants' theory that the premises in question were purchased with separate funds may be summed up as follows: (a) Certain checks of Reno W. Winters to the United States Internal Revenue Department might be taken as indicating that he had made returns to that department of a net income during his married life insufficient to more than pay family expenses; (b) $1,500 of the selling price of the pool-hall were traced into a bank account much greater in total amount from which the $2,150 paid for the premises in question were drawn; (c) the testimony of Reno W. Winters in regard to his income and assets before and

after his marriage, both as to amount and character, was very vague, and at many times contradictory and unsatisfactory. No direct *affirmative* testimony whatever appears in the record that the $2,150 paid for the premises in controversy was the separate property of Reno W. Winters. It is suggested that we assume that at least $1,500 of this amount was the purchase price of the pool-hall, since that had been deposited in the account from which the $2,150 was drawn. But that account also had in it at least $3,800 of community funds, and we know of no rule of law which, under the circumstances of this case, would raise the presumption that the money so drawn out, or any portion thereof, was the $1,500 claimed to be separate funds. Indeed, the oral argument of counsel was based almost entirely upon the apparent assumption that, if plaintiffs did not show clearly and affirmatively that the money with which the realty in question was purchased was community funds, it must be presumed that it was the separate funds of Reno W. Winters, acquired before his marriage, and concealed by him during all the period thereafter until the property in controversy was purchased. They overlook the fact that the burden is not upon the plaintiffs to prove the property is community, but upon defendants to establish by strong and convincing evidence that it did not have such a character. *In re Curtis' Estate,* 116 Wash. 237, 199 Pac. 309.

In view of the undisputed facts that the deed to the apartment house was made to plaintiffs jointly, that the deed to the premises in question described Winters as a married man, that both Winters and Rundle apparently considered it necessary to ask Mrs. Winters to sign the option in the first place, and, above all, that both plaintiffs had always up to the time of the granting of the option treated all their property,

both capital and earnings, with the exception perhaps of the pool-hall, as community, we think the evidence fell so far short of the proof required to overcome the presumption of community estate that, had the jury answered an interrogatory to the effect that the property was purchased with the separate funds of Reno W. Winters, it would not only have been the right, but the duty, of the trial court to disregard such answer as not sustained by the evidence. If such was its duty, it would obviously have been a waste of time to allow the jury to consider an interrogatory to which only one answer could legally have been returned. We are therefore of the opinion that the court properly discharged the jury and found as a conclusion of law from the evidence that the premises in question were the community property of the plaintiffs.

But, it is said, the record shows that Reno W. Winters was guilty, on his own confession, of an attempt to defraud both his wife and defendants, and that, this being an equitable action, he who seeks equity must come with clean hands in order to obtain any relief. Were Reno W. Winters the only interested party, the contention of defendants would be unanswerable. But Lulu M. Winters is also vitally interested in the result of the case, and her hands are clean under any theory, and she may not be deprived of her rights because those of others are unclean. Were it not for the nature of the community estate, as defined and explained by us in many cases, from that of *La Tourette* v. *La Tourette, supra,* to *Forsythe* v. *Paschal,* 34 Ariz. 380, 271 Pac. 865, and our statute in regard to parties, the court should, and doubtless would, have dismissed the action as to Reno W. Winters. But paragraph 403, Revised Statutes of Arizona of 1913, Civil Code, expressly provides:

"403. When a married woman is a party her husband shall be joined with her except:

"(1.) When the action concerns her separate property she may sue or be sued alone. .

"(2.) When the action is between herself and her husband, she may sue or be sued alone."

It was absolutely necessary that plaintiff Lulu M. Winters join her husband in this action, nor could her rights be protected unless he remained a party.

It is also urged that the court erred in canceling the contract, even though the realty described therein is community estate, for the reason that it was a valid and binding contract so far as Reno W. Winters is concerned, and that at some later date, in case the community is dissolved by death or otherwise, he would have a separate estate against which it might be enforced. The answer to that contention is that a contract made by one spouse which attempts to encumber the community realty, where the other party to the contract knows of the marriage, and that the property affected by the contract was acquired during coverture, is void and not merely suspended in its operation so far as the realty itself is concerned. *Fargo* v. *Bennett,* 35 Idaho 359, 206 Pac. 692; *Holyoke* v. *Jackson,* 3 Wash. T. 235, 3 Pac. 841; *Hoover* v. *Chambers,* 3 Wash. T. 26, 13 Pac. 547. It might be, though this we do not decide, that defendants would have a personal action for damages against Reno W. Winters, but this could in no manner bind the land in question, or permit a specific performance of the contract, either now or at a later date. *Colcord* v. *Leddy,* 4 Wash. 791, 31 Pac. 320.

To illustrate the impossibility of defendants' contention on this point, if plaintiffs should determine to sell the land to a third party, either the option has some effect or it has not. If it has, it is an encumbrance on the realty, which is prohibited by statute;

if it has not, then at no later time could it become one. The statute does not say that the right of either spouse to encumber community realty shall be *suspended* during the continuance of the community, but that they *shall not* encumber it. The judgment of the court, it will be noticed, in no way determined whether or not the making of the contract between Reno W. Winters and defendant Rundle created any rights as between them, but merely that it was of no effect as against the property. We think this was correct.

We have considered each and all of the assignments of error and the legal propositions presented by defendants in the light of what we have determined to be the general principles of law applicable to this case, and we think it unnecessary to discuss them *seriatim,* as they are all disposed of by a proper application of those principles. The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.