[No. 21390.   *En Banc.*   March 14, 1929.]

W. T. RAWLEIGH COMPANY, *Appellant*, v. FRANK D. McLEOD *et al., Respondent.*[1]

*L. H. Brown,* for appellant.
*Clyde H. Belknap,* for respondent.

TOLMAN, J.—On January 7, 1928, there was entered in this cause a judgment against O. I. Olson and another for upwards of two thousand dollars, which expressly provides that it is a separate obligation and may not be enforced against the community property of Olson and wife.

The judgment creditor caused execution to be issued, which was returned in due time *nulla bona.* Thereupon

[1] Reported in 275 Pac. 700.

supplemental proceedings were instituted on the judgment, and respondent Olson and his wife were cited to appear before the court and submit to examination under oath touching property which might be subject to execution under the judgment.

After a full hearing, the trial court refused to make the findings proposed by either party, but entered a final order where it is recited:

". . . that Lot Five (5) and the Southeast Quarter (SE¼) of the Northwest Quarter (NW¼) of Section Six (6) in Township Twenty-seven (27) North Range Forty-three (43), Spokane county, State of Washington, and all other property disclosed at this hearing standing in the name of or belonging to O. I. Olson and his wife, Mrs. O. I. Olson, and of each of them, are not subject to the lien of plaintiff's judgment herein, and belong to the community consisting of O. I. Olson and said Mrs. O. I. Olson, his wife; that the application of plaintiff for a receiver to take charge of the property belonging to said defendants be denied, and that said defendants O. I. Olson and C. A. Gray shall recover from the plaintiff costs in the sum of twenty-five dollars ($25), to be applied as a credit upon plaintiff's judgment."

The plaintiff has appealed from that order.

The power of the court to make such an order is not questioned, and we therefore assume that, in the making of it, the court properly exercised the power granted by the amendment of 1923, Rem. 1927 Sup., § 638-1.

■ The question to be decided is, Do the facts warrant a holding that the property described was community property?

It appears that respondent Olson, before his marriage, purchased a house and lot in the city of Spokane, paying five hundred dollars therefor, and assuming a mortgage of two hundred or two hundred fifty dollars, which mortgage he paid off out of his earnings before his marriage. After marriage, he and Mrs. Olson

made their home in this house. Mrs. Olson had, perhaps, six hundred or seven hundred dollars at the time of the marriage, and, out of her funds, something like one hundred twenty-five dollars was spent in repairing and improving the house and grounds. About six months after the marriage, the house and lot in Spokane were exchanged for the land now under consideration. The exchange was an even one, and the consideration named in each deed was eighteen hundred dollars. The land which Olson thus obtained was cut-over land, only four acres being clear, and the buildings thereon were of little, if any, value. When the farm land was thus obtained, it was agreed between the Olsons, husband and wife, that they would make it their home, that the wife's money should be devoted to improving it, along with all of their other resources, and that it should belong as much to one as to the other. For some twenty-two years next preceding the hearing, the Olsons had lived up to this agreement. Nearly seventy additional acres were cleared and brought into cultivation; a considerable addition to the house and a barn and other outbuildings, were constructed. All of the wife's separate money went into the common purse, together with the profits made in the purchase and sale of a lot, purchased with what was originally her separate funds; and by these means, coupled apparently with great industry and frugality on the part of each, they made this wild and non-productive tract a valuable farm and a comfortable home. The actual improvements put upon the place probably cost, at the time they were made, not less than forty-five hundred dollars in money and labor, and at the present time would cost much more.

The chief and only real dispute in the testimony is as to the value of the farm lands when they were acquired, and as to their present value. If it be neces-

sary to fix these values, we would hold from the record before us that the lands were worth not to exceed one thousand dollars when acquired, probably somewhat less, and that the present value is less than one thousand dollars in excess of the cost of the improvements. In other words, the community has put at least forty-five hundred dollars in money and labor into improvements on the land, which, so improved, is now worth not more than five thousand dollars.

But the real question here is, In whom is the title now vested? The property was acquired in 1905 in exchange for separate property of respondent Olson, and we must hold that title was then vested in him alone and, by that conveyance, the community obtained no interest. We have said in a long line of cases that the status of real property is fixed as of the time when it was acquired. Our previous holdings to that effect, fourteen cases in all, are cited in *In re Brown's Estate,* 124 Wash. 273, 214 Pac. 10, and since that time we have continued with unbroken regularity to recognize the principle. *Riverside Finance Co. v. Griffith,* 140 Wash. 322, 248 Pac. 786; *Norman v. Levenhagen,* 142 Wash. 372, 253 Pac. 113; *In re Williams' Estate,* 145 Wash. 19, 258 Pac. 851. See, also, *In re Hart's Estate,* 149 Wash. 600, 271 Pac. 886. This is a wholesome rule and we cannot now depart from it.

But it is contended that, in *In re Carmack's Estate,* 133 Wash. 374, 233 Pac. 942, we held that the community, by improving the separate realty of one of the spouses, became an owner in proportion as the community funds increased the value of the whole. We think that is not a correct estimate of the holding. It was there said:

"This situation would unquestionably give the community a large interest in, but not the entire ownership of, the property, because there can be a segregation of

the community interest from the separate interest of Mrs. Carmack. The bare lot was hers, the improvements thereon belonged to the community. . . . We therefore hold that Mrs. Carmack had an interest in this property which is her separate property, yet much the larger interest belongs to the community. It is impossible, of course, to physically segregate the separate from the community interest. It is therefore necessary that the whole of it be put into the hands of the administrator for administration. It is probable that the administrator should ultimately be required to account to Mrs. Carmack according to her separate interest.''

In speaking of the community interest, the court did not mean title, but was looking to the equities of the case, probably having in mind that, on the death of one of the spouses and the probate of his estate, an equitable lien in favor of the community could be recognized and adjudicated. In the recent case of *In re Hart's Estate, supra,* the community advances were held to be a gift to the wife, but there is, in that case, no denial of the principle that, if there was no such gift, the community might have, by such advances, acquired an equitable lien.

However, that question is not now before us, and will be left for decision when presented. We hold that the title, when taken, vested in respondent alone, as his separate estate, and, since there has been no conveyance by Olson or by operation of law, the title still remains in him and subject to the lien of the judgment in its proper order. What that order may be, whether it is preceded by an equitable lien in favor of the community, by homestead rights, or other liens and encumbrances, can all be determined if, and when, such prior rights are asserted at any time before sale on execution or perhaps, as to some, afterwards.

The final order, except as it denied the appointment of a receiver, is reversed.

PARKER, FRENCH, and MILLARD, JJ., concur.

BEALS, J. (concurring)—Being satisfied that the conclusion reached by the majority is correct, I concur in the reversal of the judgment of the trial court. It seems to me, however, that there is no sufficient basis in the record for the formation of any opinion as to the proportion of the present value of the real estate in question which is the result of the efforts of the community composed of respondents O. I. Olson and wife and that which is due to an increase in value of the property from other causes. An estimate of the value of any equitable interest which a marital community may have in a tract of real estate, which has been occupied by the husband and wife as their home and on which they have raised produce for the market, involves many elements which fall some on one side of the account and some on the other, and which must all be considered in arriving at the correct solution of such a problem. In the case at bar, no such question is now presented, and I do not desire to express any opinion thereon.

MITCHELL, C. J., concurs with BEALS, J.

FULLERTON, J. (dissenting)—I am unable to concur in the conclusion reached in the foregoing opinion. With the statement of the facts therein recited, I have no quarrel, but I am wholly at variance with the deductions that are drawn from the facts.

The community property laws of this state, it must be confessed, present many perplexing problems. The definitions contained in the statutes of that character of property, as well as the definitions of what constitutes separate property, are sufficiently clear in so far as they go, and, so long as property is acquired in any

of the methods falling strictly within these definitions, no difficulty arises. But the statutes do not meet all of the situations by which property may be acquired. For illustration, property may be acquired in part by means which would bring it within the definition of community property, and in part by means which would bring it within the definition of separate property; community and separate property may be so commingled as to render it difficult or impossible to separate the one part from the other; separate property may be acquired by one of the spouses, which, at the date of its acquisition, has but little value, but which, by the combined efforts of both of the spouses, may be brought to a considerable value; and the spouses may make contracts between themselves by which community property is changed to separate property, or by which separate property is changed to community property. As between the spouses themselves, when some one of these situations arise, there is usually not much difficulty in doing substantial, if not exact, justice. But it is not so easy where the rights are acquired by a third person against one of the spouses, and that person undertakes to sequester the rights of such spouse in the property to his own benefit. To meet the situations such as I have pointed out, this court, while realizing that no general rules can be formulated which will meet every situation that may arise, has adopted certain general rules by which it will be guided in the consideration of the questions. The first and, to my mind, the principal one of these, is that all property acquired by married persons subsequent to the marriage is presumptively community property. This rule was laid down in the early case of *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398, and I know of no subsequent case where the rule has

been departed from, while the cases affirming it are so numerous that it would be idle to cite them.

In my opinion, this rule alone should control the case before us against the conclusion of the majority, even assuming, as the majority do assume, that the purchase price of the property was paid entirely by the respondent husband. There must come a time, I think, when this presumption becomes absolute. This property, it will be remembered, was acquired nearly a quarter of a century ago. The respondents moved upon it immediately, and have ever since made it their home. They have at all times claimed it as community property, and have, by their joint labor and frugality, so improved it as to increase its value more than five-fold. They have been honest in their claims and purposes. Their acts were not prompted by any fear of the claims of creditors or other claims. They have but conclusively presumed the property to be what the law said it presumptively was. Had the appellant been claiming under an absolute title, its right to recover the property as against the respondents would have been long since barred by the statutes of limitations, and that it may now, as a simple judgment creditor of one of the spouses, claim it to be held by a different title than the owners themselves have all of these years openly asserted it to be so held, is not in accord with my idea of the statutes and general rules of law intended to prevent the enforcement of delayed and stale claims.

But I think there is another reason why the property should not be held to be the separate property of the husband. As shown by the facts recited in the majority opinion, the wife had, at the time the marital relation was entered into, separate property of her own, approximately equal to that possessed by the husband. At the time the exchange was made, it was

orally agreed between the husband and wife that the wife would invest her separate holdings in improvements on the acquired property, that they would occupy it as their home, and that it should belong as much to the one as the other. It is possible that, when the agreement was formulated, the parties did not use the term "community property," but I think no one can doubt that it was the intention of the agreement to hold the property by the title that property acquired after marriage is usually held by husband and wife; that is, as community property. The majority give no effect to this agreement, for the reason, presumably, that it is thought to be invalid. But if this be the reason for not recognizing it, I think it unfounded. The agreement was founded upon a valid consideration, and was executed by the parties to it in so far as it was capable of execution; that is to say, each of the parties paid the consideration agreed to be paid, and since the time of its execution, for a period of more than twenty-two years, have recognized it and acted upon it as a valid agreement. Manifestly, neither of the parties themselves could repudiate or invalidate it to the detriment of the other, and it being valid as between the parties, I see no reason why it is not valid as against all others whose interest to question it arises subsequent to the time it was entered into and acted upon. I concede that, had the appellant been a creditor of the respondent husband at the time the agreement was made, its rights against the husband's property would not have been affected by the agreement, but it was both shown and admitted that it was not then a creditor.

Our cases, as I understand them, have heretofore been in favor of the foregoing principle. In the somewhat early case of *Yake v. Pugh*, 13 Wash. 78, 42 Pac. 528, 52 Am. St. 17, it appeared that the husband and

wife entered into an oral agreement to the effect that the personal earnings of the wife in following certain pursuits should be her separate property. Acting under the agreement, the wife made earnings which she invested in personal property. Certain creditors of the community, who had become such after the agreement and after the property had been earned, sought to satisfy a judgment out of the property so acquired. It was held that the property was the separate property of the wife, and not subject to sale for a community debt. In *Dobbins v. Dexter Horton & Co.,* 62 Wash. 423, 113 Pac. 1088, under a similar agreement, the wife acquired real property by her personal earnings, which was sought to be taken by a creditor in satisfaction of a community debt. We held the contract valid, and that the property acquired thereunder was the separate property of the wife. A similar agreement was again upheld in *Gage v. Gage,* 78 Wash. 262, 138 Pac. 886. In *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304, Ann. Cas. 1918E 710, an oral agreement between husband and wife, made after marriage, to the effect that all of the personal earnings of each of them should be the separate property of the spouse earning it, was upheld; the court saying, that "such contracts made after marriage and mutually observed, are valid." In *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409, there was an agreement between husband and wife to the effect that the separate property of the parties

". . . shall be by us, and by all persons whomsoever, deemed, esteemed, regarded, treated and known as community property."

After the death of the wife, her heir claimed an interest in the property on the ground that the agreement was invalid. The court, citing our former cases,

held the agreement valid, using, in the course of the opinion, this language:

"These cases hold that community property may be changed to separate property regardless of § 5919, Rem. Code. If this is so, the converse must be true, that separate property may be changed by a proper conveyance or agreement into community property. The policy of the law is in favor of community property, and there is no provision in the law operating against the agreement of February 16, 1915, taking effect as it was intended."

And in *In re Martin's Estate,* 127 Wash. 44, 219 Pac. 838, an agreement was recognized as valid, in which it appeared that a husband and wife had divided their accumulated property between them; the court saying, in effect, that we had repeatedly held it competent for married persons, when the rights of creditors did not intervene, to divide their property, and enter into an agreement that thereafter the earnings of each of them shall be the separate property of the one earning it.

In principle, I can see no difference between the contracts held valid in the cited cases and the contract entered into in the instant case. Indeed, it seems to me there is less reason to favor them than there is to favor the instant contract. This one contains elements not present in the others—elements which seem to me to appeal more strongly in favor of the rule than do any of the others. To recapitulate the facts, at the risk of repetition: Here the contract was entered into after marriage. It was entered into prior to the acquisition of the property and in contemplation of its acquisition. There were then no creditors, or other persons, whose interests could be adversely affected by it. Each of the spouses had, at that time, approximately an equal amount of separate property, and it was agreed that this should be invested in the prop-

erty, and it was, at the time of the acquisition or shortly thereafter, actually invested in it. The contract has been continuously acted upon since it was entered into, during which time the parties have, by their common efforts, greatly added to its value. Manifestly, it seems to me, the court would not say that, as between the spouses, the property was the separate property of either of them, and, this being true, it should not say that it is separate property as to a creditor. This view is not to deny the operation of the rule stated, and relied upon as controlling, in the majority opinion. On the contrary, it is but an affirmation of that rule. It is but to say that a husband and wife can orally make a lawful agreement to acquire real property, and may further lawfully agree that the property when so acquired shall be their community property, regardless of the source from which the purchase price of the property may come. The title to the property is still fixed as of the time of its acquisition, but it is fixed in accordance with the agreement, not from deductions drawn from the source of the purchase price.

There is still another reason why I think the property should be held to be the community property of the respondents. It is a rule, well settled in this jurisdiction, that, where separate funds have been so commingled with community funds that it is impossible to apportion them, all of the commingled fund, or the property acquired thereby, is community property; this because of the presumption in favor of the community and the favor with which the law regards such property. *Yesler v. Hochstettler*, 4 Wash. 349, 30 Pac. 398; *Doyle v. Langdon*, 80 Wash. 175, 141 Pac. 352; *In re Buchanan's Estate*, 89 Wash. 172, 154 Pac. 129; *Jacobs v. Hoitt*, 119 Wash. 283, 205 Pac. 414; *In re Carmack's Estate*, 133 Wash. 374, 233 Pac. 942. As

shown by the recital of the facts made in the majority opinion, the present value of the property in question is the result, for its far greater part, of the community efforts of the husband and wife. They have brought it from a comparatively small value to its now considerable worth. How much of this increased value is due to natural causes, or is due to the community efforts of the respondents, there is now no way of ascertaining with any degree of exactness. It is again to be remembered in this connection that, when the funds were actually commingled, there was no separate creditor of either spouse who had a right to complain of the acts of the parties in that regard; that the creditor now complaining became such long after the commingling commenced, and after it had continued for a period more than double the time fixed by the statute of limitations as a bar to a recovery of the property, even by one who could show a superior outstanding title. There was here, in my opinion, such a commingling of separate and community funds as to require the application of the rule above cited, rather than the rule applied by the majority.

But, if I am wrong in the foregoing conclusions, I think that, taking the view of the transaction the majority adopt, the judgment they have directed is erroneous. It will be remembered that the wife had invested in the property given in exchange for the property in question, at least one hundred and twenty-five dollars of her own separate funds. This, measured by the actual cost price of the property, was a considerable proportion of its value. Since the title is to be determined by the source of the purchase price, I see no reason why the wife should not be accorded an interest in her own separate right in the property in the proportion that the amount advanced by her bears to the total of the purchase price. Possibly the ma-

jority, although they do not so state, treat the advance of the wife as a gift to the husband, or possibly as an investment which would give her no interest in the property in which it was invested. But to the first of these possibilities, it is a sufficient answer to say that the evidence does not show it to be a gift, and there is no rule of law that conclusively makes it so. To the second, I think it a sufficient answer to say that her investment added value to the property exchanged, and that this value went into the purchase price of the property received in the exchange. Manifestly, her contribution to the purchase price was as potent as was that of the husband, and any rule of law which would vest a separate title in him would also operate in her favor, and the judgment permitting a sale of the property should be limited to a sale of the husband's interests only, leaving the question as to the interest acquired to future determination.

My conclusion is that the judgment of the trial court should be affirmed; but, if it is not to be affirmed, there should be a modification of the order directed by the court.

HOLCOMB, J. (dissenting)—On the incontestable facts in this case, I can concur neither in the prevailing opinion nor in all the views of Judge Fullerton.

The majority opinion proceeds upon the certitude that the rule is inexorable that the status of the title is immutably fixed *as of the time of its acquisition,* which is not correct. If that were true, no kind of title could change in form after acquisition by husband or wife under any circumstances; and we have, under many circumstances and in numerous instances, held to the contrary. But even if the rule of inflexibility applies, this property was all acquired by the spouses during coverture. The presumption, always favored

in law, as Judge Fullerton says, as to such property, is that it is community property. The evidence to rebut that presumption must be of a clear, certain and convincing character. *In re Slocum's Estate,* 83 Wash. 158, 145 Pac. 204, and *In re Curtis' Estate,* 116 Wash. 237, 199 Pac. 309.

In this case, all the evidence is that, regardless of the agreement between the spouses, the property became community property by confusion and commingling. In *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129, Judge Parker wrote it into the law that gains which are the product of community individual efforts during coverture become community property. He said:

"These observations, we think, in any event, lead to the conclusion that the gains and profits produced by the personal efforts of appellant, though added to, in a measure, by the original investment, become community property. We agree, however, with the trial court that the funds, though at the beginning separate property of appellant and Sarah A. Buchanan, in the proportion of four-ninths and five-ninths, which purchased the stock in the first instance, have during the ten years of coverture become so intermingled with community property and lost their identity as separate property that all of the stock and interest in the Puget Sound Lumber Company, standing in appellant's name, became the community property of appellant and his deceased wife, Sarah A. Buchanan."

True, that was personalty; but our statutes and precedents apply to realty as well as personalty.

In addition, at a time when no imposition upon creditors could result, or was contemplated, these spouses contributed what each had owned separately to the community, agreeing that it should thenceforth constitute common property. Thereafter, they jointly, not separately, contributed and individually labored, improving and adding to the value of the common prop-

erty. Whether the added gain be much or little, all of it became community property.

In *Union Securities Co. v. Smith,* 93 Wash. 115, 160 Pac. 304, Ann. Cas. 1918E 710, an oral agreement between husband and wife after marriage, not made with intent to defraud creditors, and continuously acted upon, that the personal earnings of each of them should be the separate property of the spouse earning it, was upheld. In *Volz v. Zang,* 113 Wash. 378, 194 Pac. 409, an agreement between husband and wife that all their separate property should be community property, was upheld, which exactly fits this case.

Under the agreement between these spouses, we should, no doubt, hold that they themselves, or either of them, would be estopped to deny that the property is, and for more than twenty years has been, community property. See *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac. 1009; *Morse v. Johnson,* 88 Wash. 57, 152 Pac. 677; *Rawlings v. Heal,* 111 Wash. 218, 190 Pac. 237, and *In re Sanderson's Estate,* 118 Wash. 250, 203 Pac. 75.

What binds them, binds all the world as to the title, in the absence of fraud.

Either upon the theory of the commingling of the property so that it cannot be distinguished as separate property, or upon the agreement made between the spouses when the property was acquired, or both, I am firmly convinced it is community property.

The judgment should be affirmed.

I therefore dissent.

MAIN, J. (dissenting)—Upon the authority of the case *In re Carmack's Estate,* 133 Wash. 374, 233 Pac. 942, it is my opinion that the judgment should be affirmed.

I therefore dissent.