[No. 27798. *En Banc.* February 3, 1941.]

CHARLES L. CONLEY, *as Trustee, Respondent*, v. JOHN MOE, *et al., Appellants.*

[1]Reported in 110 P. (2d) 172.

356

*James C. McKnight,* for appellants.

*J. Speed Smith* and *Henry Elliott, Jr.,* for respondent.

Millard, J.—Plaintiff, trustee in bankruptcy of the marital community consisting of defendants John Moe and Borghild J. Moe, instituted an action, March, 1938, to cancel, as a fraudulent conveyance, a quitclaim deed, executed by John Moe, covering certain realty which was his separate property; also, to establish in favor of the trustee an equitable lien upon the realty in an amount to be determined by the court, and to foreclose such lien. The cause was tried to the court, which filed its memorandum decision February 20, 1939, and entered decree May 12, 1939, granting plaintiff the relief sought and fixing the amount of the lien at two thousand dollars. The defendants appealed.

The cause is before us on an agreed statement of facts, which was filed in this court September 22, 1939. The brief of appellants was filed in this court September 26, 1939. By stipulation of the parties, time for filing respondent's brief was extended to December 1, 1939, and later extended to December 26, 1939. On the latter date, the cause was set for hearing January 11, 1940, before department two of this court. The death, April 29, 1940, of the judge to whom the cause was assigned for opinion in the January, 1940, term of this court necessitated reassignment. On July 9, 1940, the cause was set for rehearing *En Banc* at the September,

1940, term of this court. On request of the parties, the cause was heard *En Banc* November 7, 1940. The cause was then assigned to another judge for opinion. With that opinion, a majority of the court did not agree. December 11, 1940, the cause was assigned to the present writer for opinion, which was written December 20, 1940, and placed in circulation among the members of the court.

The agreed statement of facts is as follows: John Moe and Borghild J. Moe were married in 1927. Prior to their marriage, Moe acquired title to an unimproved lot, fronting on 36th Ave. S. W., in Seattle, and Borghild J. Moe had acquired title to two lots, which apparently were improved with a dwelling house, located on 44th Ave. S. W., in the same city. This action has to do solely with the 36th Ave. S. W. property, the title to which stood in the name of John Moe.

In 1929 or 1930, a house was erected upon the lot owned by John Moe, at a cost of approximately thirty-five hundred dollars. The improvement was financed by means of eleven hundred dollars which Mr. Moe saved prior to his marriage; also, by the proceeds of a loan in the amount of fifteen hundred dollars obtained from a savings and loan association, secured by a mortgage on the property involved in this action, and by means of a loan of one thousand dollars obtained from Axel Neilsen, father of Borghild J. Moe. Whether Mrs. Moe was a party to the transaction under which the loan was obtained from the savings and loan association, is not disclosed by the agreed statement of facts. The loan obtained from Axel Neilsen is evidenced by a promissory note executed by John Moe alone.

As soon as the house was completed, sometime in 1929 or 1930, the Moes moved into it and occupied the property as their family home. They continued to re-

side there until May, 1937, when they moved into the 44th Ave. S. W. property owned by Mrs. Moe, where they lived until August, 1938. They then moved back into their former home on 36th Ave. S. W., prior to which time the present action was commenced.

During the time the spouses occupied the 36th Ave. S. W. property, the legal title was in the name of John Moe. The community did not pay any rent therefor and the husband and wife never mentioned the matter of rent. During the period of fifteen months they were absent from that property, the place was rented and the rentals were collected by John Moe. Subsequent to the marriage, Mr. Moe had no income other than the wages which he received as an employee of the city of Seattle. From his earnings as such employee, the obligation of fifteen hundred dollars to the savings and loan association, together with the accrued interest thereon, was paid at the rate of twenty-five dollars monthly. Also, out of his earnings, interest of fifty. dollars annually on the Neilsen note was paid. The general taxes on the property, averaging fifty dollars per annum, special assessments, amounting to four hundred or five hundred dollars, against the property, additional improvements, costing approximately two hundred or three hundred dollars, and premiums on fire insurance policies, amounting to twenty dollars for each three-year period, were all paid from the same source—the earnings of Mr. Moe as an employee of the city of Seattle.

In March, 1936, an action for wrongful death was brought against the Moes and against Mrs. Moe's son by a former marriage, in which action a judgment was obtained about one year later against the marital community composed of John Moe and Borghild J. Moe and against Mrs. Moe's son.

Shortly subsequent to the commencement of the action for wrongful death, John Moe executed a quitclaim deed to his father-in-law, Axel Neilsen, covering the 36th Ave. S. W. property which is the subject matter of this controversy; at the same time, Mrs. Moe executed a quitclaim deed to her brother-in-law, Andrew Hegdahl, covering the 44th Ave. S. W. property owned by her. Both deeds were executed for the purpose of preventing liens from attaching against those two pieces of property by reason of any judgment which might be rendered in the wrongful death action against either John Moe or Borghild J. Moe; however, neither of those deeds was delivered to the grantee named therein, but both were retained and later filed for record by the attorney for the Moes. Axel Neilsen, the grantee in the quitclaim deed covering the 36th Ave. S. W. property, never made any request or demand for security for the note mentioned above in the amount of one thousand dollars, but, at the instance of the attorney for the Moes, consented to be named as grantee in such deed.

Within two months after the rendition of judgment in the wrongful death action, John Moe and Borghild J. Moe, as a marital community, filed a voluntary petition in bankruptcy. The community was duly adjudicated bankrupt, and respondent was elected trustee in bankruptcy thereof. Claims aggregating $15,840, arising out of the wrongful death action, were filed against the estate of the bankrupt community. Respondent, as such trustee, thereafter brought this action.

In the decree, the trial court adjudged that the title and interest of the appellants in the real estate covered by the quitclaim deed from John Moe to Axel Neilsen were subject to a lien in favor of the trustee in bankruptcy in the amount of two thousand dollars "by rea-

son of contributions which the said community made to said real estate in the improvement thereof."

The agreed facts disclose that the conveyance of the property from John Moe to his father-in-law was a fraudulent conveyance. The very purpose of that conveyance was to defeat the collection of any judgment obtained in the wrongful death action. We will treat this case (as we should) as if the quitclaim deed had never been executed, and as if the title to the property in question were still in the name of John Moe.

Whether, under the facts and circumstances present in this cause, the trustee in bankruptcy is entitled to have an equitable lien impressed upon the property, the title to which is in John Moe, is dependent upon whether an equitable lien in favor of the marital community should be impressed upon the separate property of John Moe to the extent that community funds were expended in conection with that property. Any right in favor of the trustee must be founded upon a similar right vested in, or accruing to, the marital community.

It is, as contended by counsel for appellants, well settled in this jurisdiction that the status of property, whether real or personal, becomes fixed as of the date of its purchase or acquisition, and remains so fixed unless changed by deed, by due process of law, or by the working of some form of estoppel. *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac. 1009; *In re Woodburn's Estate,* 190 Wash. 141, 66 P. (2d) 1138; *In re Finch's Estate,* 198 Wash. 567, 89 P. (2d) 218; and *In re Binge's Estate,* 5 Wn. (2d) 446, 105 P. (2d) 689.

The foregoing specific rule, enunciated in the cases cited and followed in other cases from this court, particularly refers to the legal title to the property, and not directly to such interests or rights as are founded upon equitable considerations. In quite a number of our cases, which announce and follow the rules stated

above, the rule is conceded that the legal title may be subject to certain equities, according to the facts and circumstances of the particular case.

In *Legg v. Legg,* 34 Wash. 132, 75 Pac. 130, we specifically held that, in equity and fairness to the wife, who was the survivor of the community, she was entitled to reimbursement from separate real property of her husband to the value of the improvement made on that property by the community. In that case, from the time of their marriage and during a period of twenty-five years, the husband and wife lived upon a forty-acre tract of land which the husband had acquired in its unimproved state prior to the time of the marriage; that the spouses enhanced the value of the land in a substantial amount by their joint efforts in placing betterments thereon; and that, at the time of the death of the husband, the wife had no property of any kind except her community interest in the land. Upon that combination of considerations, we concluded that the equities of the case demanded allowance to the wife of a lien upon the land to the extent of the value of the betterments placed thereon during the existence of the community, together with interest on the amount thus ascertained by the court.

It cannot be gainsaid that we have consistently held that the wife, at the death of her husband, should, in equity and good conscience, be awarded the interest to which she is entitled in improvements by the community on land separately owned by the husband; however, it is the position of the minority that, if a creditor of a community seeks to impress a lien against such interest, he should be denied relief.

The trial court correctly decided, under authority of our prior opinions, that, where a marital community invests substantial sums of money in construction of a dwelling house upon a vacant lot owned sepa-

rately by the husband, which improvement greatly enhances the value of the property, the community acquires an interest in, or an equitable lien against, the property, which passes to the trustee in bankruptcy upon adjudication of the community as a bankrupt, so that the trustee may enforce such equitable right on behalf of the bankrupt's creditors.

It may be suggested that, in the balancing of equities, the husband is entitled to a reasonable rental for the use of the premises during the period of its occupancy by the community. No question respecting the charging of ground rental against the community for use of community property erected upon the lot is present in the case at bar. If, in equity and fairness to the wife, she should be reimbursed for betterments placed by the marital community upon land which was the separate property of the husband, by the same token (common honesty so demands) the interest of that community in the property should be impressed with lien of a creditor of the community. The rights of creditors of a community to impress a lien upon such community should be recognized. If the wife seeks, and is entitled to, equity, surely she should be required to do equity. It would not be equitable to require the creditor to await the death of the husband before his lien could be impressed upon the community interest in the property.

The status of the separate property of the husband would not be affected by the erection of a building thereon, and the payment for such improvement of the separate property after marriage, if the rents, issues, and profits of the separate property (or other property separately owned by the husband) were sufficient to pay the cost of the improvement and upkeep, and there was an absence of clear and con-

vincing evidence establishing any community interest or the extent thereof. However, to the extent that the property in question was produced or value increased by the efforts of the spouses, it would be community property. The increased value of the property in controversy is due solely to the efforts of the spouses.

While the natural enhancement in value, during coverture, of the separate property of the spouses, is not property acquired during marriage, within the spirit of the community property law, which provides that property acquired before marriage and in certain ways, together with the rents, issues, and profits thereof, shall be the separate property of the spouse acquiring it, and that all other property acquired after marriage shall be community property, it should be borne in mind that, if, as in the case at bar, the separate property is enhanced in value by the use of community funds in a substantial amount, to the extent of that enhancement in value it is community property. *In re Woodburn's Estate,* 190 Wash. 141, 66 P. (2d) 1138.

This is not a case of the erection of a building upon separate property of the husband, where rentals of the separate property would be sufficient to pay the cost of the improvement and upkeep. The evidence is clear and convincing that the husband had no separate income, and that the enhancement in value of the property was solely due to the use of community funds in a substantial amount.

If unimproved land were the separate property of the husband, who owned no other property and whose only income after marriage was the profits from a department store or other business owned by him and his wife, the greater part of which income was ex-

pended over a term of years in construction of an apartment house on the land, such increased value (which was certainly not due to natural causes, but was solely due to community efforts of the spouses) would be community property, it must be conceded. It follows, as the night the day, that, if that enhanced value or interest is community property, the creditors of the community are entitled to the right of execution against such community interest to satisfy indebtedness of the community.

The rule which the majority insists is applicable to the facts in the case at bar is not out of harmony with the community property law of this state, and is in accord with the rationale of our following prior opinions on community property questions like or similar to the one now presented:

*Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414; *In re Carmack's Estate,* 133 Wash. 374, 233 Pac. 942; *Rawleigh Co. v. McLeod,* 151 Wash. 221, 275 Pac. 700, 64 A. L. R. 238; *Salisbury v. Meeker,* 152 Wash. 146, 277 Pac. 376; *In re Buchanan's Estate,* 89 Wash. 172, 154 Pac. 129; *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673; *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398; *Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211, 123 Am St. 937; *Main v. Scholl,* 20 Wash. 201, 54 Pac. 1125; *Rawlings v. Heal,* 111 Wash. 218, 190 Pac. 237; *Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186; *Morse v. Johnson,* 88 Wash. 57, 152 Pac. 677; *Mattson v. Mattson,* 29 Wash. 417, 69 Pac. 1087; *In re Finn's Estate,* 106 Wash. 137, 179 Pac. 103; *In re Woodburn's Estate,* 190 Wash. 141, 66 P. (2d) 1138; *In re Curtis' Estate,* 116 Wash. 237, 199 Pac. 309; *Legg v. Legg,* 34 Wash. 132, 75 Pac. 130; and *In re Deschamps' Estate,* 77 Wash. 514, 137 Pac.

1009. See, also, *Lake v. Bender,* 18 Nev. 361, 4 Pac. 711, 7 Pac. 74.

The decree is affirmed.

MAIN, SIMPSON, BLAKE, and DRIVER, JJ., concur.

STEINERT, J. (dissenting)—I accept, as correct, the majority's statement of the facts in the case, and, likewise, agree with what is said in the opinion from its beginning down through its analysis of the case of *Legg v. Legg,* 34 Wash. 132, 75 Pac. 130. The remainder of the opinion, however, proceeds upon a theory and reaches a conclusion with which I am not wholly in accord.

The question presented by the issues in this case is whether or not, *under the facts and circumstances here involved,* the trustee in bankruptcy of the *marital community* is entitled to have an equitable lien impressed upon the *separate property* of John Moe, a member of that community. Any right of the trustee in that respect must necessarily be founded upon a similar right vested in, or accruing to, the marital community. The immediate question, then, is whether or not, *under the facts and circumstances presented by this case,* an equitable lien *should be* impressed upon the separate property of the husband, John Moe, to the extent that community earnings were expended in connection with that property.

If I correctly understand the theory and holding of the majority, they are that, if the separate property of one of the spouses is enhanced in value by the use of community funds, *the property,* to the extent of such enhancement *becomes, and is, community property;* or, expressed somewhat differently, that, if the marital community invests substantial sums of money in the improvement of the separate property of the husband, the community *thereby acquires an interest*

*in, or an equitable lien against,* the property, which *passes* to the trustee in bankruptcy upon adjudication of the community as a bankrupt. I differ with the majority in both of those concepts. In my opinion, the expenditure of funds of the marital community upon the separate property of either spouse does not, *of itself,* change either the title or the character of the property, nor does it, *of itself,* vest in the contributor any interest in the property of either spouse. To the contrary, *the property,* .even though so enhanced, remains the separate property of the original owner, subject only to such equitable interests therein as may be adjudicated by the court. The proper principle applicable to such situations, and the one which this court has adopted and followed, is that the contributing party, whether it be the marital community itself, or one of the individual spouses, may be entitled *to be reimbursed* for improvements made upon, or for enhancement of the value of, such property through such contributions, and, to the extent that may be necessary in order to effect such *reimbursement,* equity will award an equitable lien upon the property in favor of the contributor. The one case which the majority opinion analyzes, *Legg v. Legg,* 34 Wash. 132, 75 Pac. 130 (cited in 77 A. L. R. 1023), specifically so holds. But reimbursement under certain circumstances is a far different thing from an interest in property under any and all circumstances.

The majority opinion endeavors to state the position of the minority by saying:

"It cannot be gainsaid that we have consistently held that the wife, *at the death of her husband, should,* in equity and good conscience, be awarded the interest to which she is entitled in improvements by the community on land separately owned by the husband; however, it is the position of the minority that, if a credi-

tor of a community seeks to impress a lien against such interest, he should be denied relief." (Italics mine.)

That is not an accurate statement of my position, nor do I accept the applicability of the premise, upon which is based the conclusion that a dissentient view is maintained by the minority.

In the first place, this case does not present an instance of a "death of the husband." John Moe, so far as this record discloses, is not dead; he is alive and active. So far as we are informed, the marital community is still intact, and is supported entirely by his earnings; in fact, his earnings compose the only property owned by the community, and from those earnings, solely, was the separate property improved. In the next place, the majority opinion *assumes* that the marital community *is entitled to an interest in the separate property,* when that is the very question to be decided in this case. Implied in that assumption, of course, is also the inference that we are dealing with a situation in which the wife is *asserting* her right to reimbursement and to the imposition of an equitable lien, and that, *under all the facts and circumstances here involved,* she is entitled to such relief. To the contrary, the wife, as a member of the marital community, denies her right to reimbursement, and, as I view it, she should not be required to have it forced upon her, under the facts and circumstances presented by the case. And, finally, the statement of the majority *assumes* that it is the position of the minority that a creditor should be denied relief merely because he *is* a creditor. My position in that respect is, rather, that the creditor, who stands in no stronger position than the debtor, should be denied relief for the simple reason that his debtor is *neither asking nor is entitled to such relief.*

If my position in this case has not already been made clear, it may be now stated thus: Substantial expenditures by the marital community or by either of the spouses, for the improvement of the separate property of the other spouse, or such expenditures by either spouse out of his or her separate property for the improvement of property owned by the marital community, *may be* the foundation of a claim by the contributing party or entity for *reimbursement* from the party whose property has been improved, or enhanced in value, by such expenditures, which claim for reimbursement may be asserted or relinquished by the contributor; that, when such claim is asserted, a court of equity will grant or withhold allowance of reimbursement according to the equities of the particular case, and, where allowance is granted, the court may, in order to secure such reimbursement, impress an equitable lien upon the property involved. In the very nature of things, the equities will vary according to the particular facts and circumstances, and in some cases the equities may flow partly in favor of one party, and partly in favor of the other, in which event it is in the power of the court, and it should be its purpose, to determine in whose favor the balance of the equities lies.

While our cases upon the subject have not laid down any specific rule by which every factual ingredient of a particular situation can be appraised or determined with exactness, there can be no doubt that this court has, by its decisions, adopted the view that, under proper circumstances, equity will allow reimbursement, and, if necessary, will award an equitable lien, in favor of the community, for improvements upon, or enhancement of, separate property, and, conversely, under like circumstances will, though perhaps not so readily, grant similar relief to an individual member

of the community for contributions from separate property to community property. The granting of such relief is predicated upon the theory that evenhanded justice requires the allowance of that form of judicial aid, under certain circumstances, in order to afford complete protection to the contributing spouse.

Most often, as our cases show, such relief is granted in a situation where the interests of the wife are involved. The reason impelling the court to such action in behalf of the wife is that, otherwise, the husband, having the greater control over community affairs, could thereby deprive the wife of every particle of interest in the community property, in many instances leaving her destitute after years of effort in acquiring and conserving a community estate. Law and equity will cooperate to defeat such results. This resume of our holdings is supported by the cases cited in the majority opinion, to which may be added the case of *Merritt v. Newkirk,* 155 Wash. 517, 522, 285 Pac. 442, 444.

With this understanding of the direction and extent to which equity will go in such cases, I will briefly state my reasons for concluding that, under the facts and circumstances here involved, no reimbursement and no equitable lien should be awarded to the wife, *nolens volens,* and, *a fortiori,* none to the respondent.

In the first place, there is no evidence, nor is there the least intimation or inference, of any overreaching or constructive fraud practiced by the husband, John Moe, upon his wife, Borghild J. Moe. To the contrary, the community is intact in every sense. The parties have not only maintained an amicable marital relationship continuously to the time of the judgment in this action, but, so far as the record gives any evidence, will continue to do so in the future. Hence, there is no occasion to consider that the wife's interests

are in jeopardy by virtue of any act or design on the part of the husband.

The agreed statement of facts reveals that both Mr. Moe and Mrs. Moe testified at the trial that, soon after their marriage, they entered into an oral agreement that neither of them should ever make any claim to the separate property of the other, and that no such claim had ever been made by either of them. It is a reasonable inference from that testimony that it was the intention of the parties that any contribution to the separate property of either spouse should be considered as a gift. While that testimony was admitted over the objection of respondent, no assignment of error is predicated upon its admission; and while the court may not have believed that testimony, there is no evidence to support a contrary conclusion. In all such cases heretofore decided by this court, the function of equity has been to protect the survivor of a marital community which no longer exists or is in process of dissolution; the effect of the majority opinion is to disrupt the security of a marital community that is still intact.

Furthermore, the wife does not in this instance occupy the position of one who requires the assistance of a court of equity to protect her against destitution. She not only has the present and continued support of her husband, but, as shown by the statement of facts, she has separate property of her own, capable of the same use as that to which the property here in question has been put. From aught that appears in the record, its value is comparable to that standing in the name of John Moe.

A further fact to be considered in the balancing of equities is this: If the community is to be reimbursed for the value of the improvements placed upon the husband's separate property, then the husband is like-

wise entitled to a reasonable rental for the use of the premises during the more than seven-year period of its occupancy by the community. While there is no evidence before us as to the rental value of the property, I think that it may be safely assumed, on the basis of the facts that we do have, that the total rental value equalled, or nearly equalled, the amount of the community contributions. At any rate, respondent has not shown that the value of the improvements and other contributions, for which he seeks an equitable lien, is in excess of the reasonable rental value of the property during its period of occupancy by the community.

Finally, it is to be noted that, while in all such instances, generally, the primary purpose of a court of equity in awarding reimbursement or granting an equitable lien is to protect the marital community, and particularly the wife, no such result would follow in this case, for here the very decree which would establish the lien in favor of the community would by the same stroke deprive the community of its benefit, and would thus leave the wife and the marital community in a considerably worse position than they were in before. When equitable interposition is invoked, a court of equity may, and should, consider the consequences of the relief which it is asked to afford, and should extend or withhold its hand in accordance with the full equities of the case.

There are, undoubtedly, instances where the interest of a bankrupt in certain property can be made available to the trustee in bankruptcy, as, for example, where, under a contract for the purchase of realty, the purchaser who subsequently becomes bankrupt had previously acquired an equitable interest in the land, or where the purchase price of realty has been paid, in whole or in part, by one person who thereafter is adjudicated a bankrupt, and the title to the land has

been taken in the name of another. The facts in this case, however, do not approach those situations, nor should they necessarily predispose the court to create and impose an involuntary lien in favor of one person merely for the purpose of transferring the benefit of such lien to another person.

In view of all the circumstances involved in this case, I see no reason for impressing an equitable lien upon the property in question in favor of the marital community, and consequently none should be decreed in favor of the trustee in bankruptcy.

The decree should be reversed, with direction to dismiss the action.

ROBINSON, C. J., BEALS, and JEFFERS, JJ., concur with STEINERT, J.